UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 5:26-MJ-5085-MAS |
| | ) | |
| SANTIAGO RODRIGUEZ, | ) | 5:26-CR-00060-GFVT-EBA |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION & ORDER**

The United States asks the Court to detain Santiago Rodriguez ("Santiago" for clarity in the record) and his codefendants pretrial following their arrest on conspiracy cocaine trafficking charges. This case presents the question of whether the United States has presented sufficient evidence that Santiago, who has no criminal history or other concerning factors outside of the instant charges, poses a risk of nonappearance and/or danger to the community. The Court finds that the United States failed to meet its burden on both accounts and will release Santiago on conditions.

## I.    ANALYSIS

Santiago and his codefendants were charged in Criminal Complaints with conspiracy to distribute five kilograms or more a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 846 and of aiding and abetting

the same in violation of 21 U.S.C. § 841(a).  [DE 1].  At the initial appearance, the United States moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(B) and (C).  The Court conducted a combined preliminary hearing and detention hearing on May 12, 2026, for all four defendants.[1]

### A. Legal standard

The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA").  At the end of the preliminary hearing, the Court found probable cause as to each defendant; thus, a rebuttable presumption of detention arises under the BRA as to both nonappearance and danger risk.  18 U.S.C. § 3142(e)(3)(A).  The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry.  The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a nonappearance nor a danger risk.  *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger").  The production burden "is not heavy," and the government retains the ultimate burden of persuasion.  *Stone*, 608 F.3d at 945.  An unrebutted presumption requires detention.  A rebutted

---

[1] The case has since been presented to the Grand Jury, who indicted all four defendants in case no. 5:26-CR-00060-GFVT-EBA.

presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Santiago proffered his stable family system, his employment, and his complete lack of criminal history made him a strong candidate for release. The Court found this information rebutted the presumption as to nonappearance and danger. Accordingly, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.,* *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors drive the analysis.

### B. <u>Santiago's Danger to the Community</u>

The § 3142(g) factors drive the analysis. Specifically, the Court must consider the history and characteristics of the defendant, the nature and circumstances of the offense charged, the weight of the evidence against the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

### C. <u>Santiago's History and Characteristics</u>

The Court must consider many aspects of Santiago's background in making the decision to release or detain him. Specifically, the BRA requires courts to "take into account the available information concerning— [ . . . ] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation[.]" 18 U.S.C. § 3142(g)(3).

Santiago is a 51-year-old Texas native. Santiago lives in Church Point, Louisiana, with his wife, on property he has owned and lived on for 25 years. Both of

his adult children live in Louisiana.  [Pretrial Services Report at 2-3].  If released, Santiago would return to that residence.  Santiago's stable residence and long-term property ownership favors release.

Santiago works as a plumbing and machine operator in the same position he has held since 2021.   [Pretrial Services Report at 2].  Prior to 2021, Santiago had worked as an oil field technician since 1996. "[A] steady employment history typically entitles a defendant to release pending trial." *Rosales v. Simon*, 2026 WL 688858, at *6 n.9 (E.D. Va., March 11, 2026).  Santiago's history is devoid of any criminal history, failures to appear in court, violent conduct, recent drug use, or mental health issues.

### D. The Nature and Circumstances of the Offense Charged

The BRA requires Courts to consider the "nature and circumstances of the offense charged, including whether the offense is a crime of violence[.]"  18 U.S.C. § 3142(g)(1).  Congress has assigned a special category of presumed detention to narcotics trafficking crimes, reflecting the seriousness of those crimes' dangerousness to the community.

The facts underlying the charges were described in the Criminal Complaint and in the generally consistent testimony of United States witness, DEA Special Agent Leah Newell, as follows:

The DEA, FBI, HSI, and Kentucky State Police were conducting a joint investigation of codefendant Marion Pinder and his alleged drug trafficking organization.  Law enforcement was conducting surveillance of Pinder at his residence on Winthrop Drive on April 20, 2026, when a Dodge Ram registered in Louisiana to Santiago arrived.  The Ram had previously been tracked to Corpus

Christi, Texas, where it had made several border crossings into Mexico. Santiago and his brother (and codefendant) Jesus Rodriguez ("Jesus") exited the Ram and went inside Pinder's garage. At one point, Jesus and Santiago unloaded a cooler from the truck bed and took it inside Pinder's garage. A short time later, codefendant Edgar Hernandez-Duron arrived and entered Pinder's garage. Law enforcement knew Hernandez-Duron as a prior target of DEA investigations. Pinder's garage door closed with all four men inside, and shortly thereafter, reopened.

Santiago and Jesus exited the area in the Ram. Law enforcement followed. Pinder loaded the cooler into a Jeep Compass. Pinder and Hernandez-Duron exited the area in the Compass. Santiago and Jesus were eventually tracked to a Hampton Inn where they had rented a room. Santiago and Jesus provided written consent for law enforcement to search their hotel room and the Ram. Law enforcement located approximately 30 kilograms of cocaine in the Ram.

Simultaneously, law enforcement followed Pinder and Hernandez-Duron to the Millpond Shopping Center. Law enforcement stopped the vehicle, at which point Pinder and Hernandez-Duron fled the area on foot—though Pinder and Hernandez-Duron suggested at the detention hearing that they either did not flee or fled but stopped of their own accords. Both men were quickly apprehended. Law enforcement approached the Jeep and viewed a kilogram of suspected cocaine in plain view in the vehicle. The packaging of the cocaine in the Jeep was consistent with the packaging

of the cocaine in the Ram.  The cooler contained only ice and shrimp.  At the detention hearing, the defendants maintained this transaction related to shrimp, not drugs.[2]

As a result of the above activities, law enforcement obtained and executed a search warrant for Pinder's Winthrop Drive residence.  During the search they recovered 16 kilograms of cocaine and a .45 caliber handgun with a round in the chamber. The total cocaine seized from the Ram, the Jeep, and the Winthrop Drive residence was 47 kilograms.  The wholesale street value of 47 kilograms of cocaine is approximately one million dollars.  *See United States v. Bucio*, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (recognizing that "the nature and circumstances of the offense in issue weigh[ed] in favor of" detention where "they ar[o]se in the context of a large drug trafficking scheme").

### E.  The Weight of the Evidence of Dangerousness

This BRA factor is somewhat duplicative of the first and third because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as Santiago's personal history.  "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).

Exclusive of the allegations in this case, there is zero evidence that Santiago poses a danger to the community.  Outside of these allegations, Santiago is, by all accounts, a model family man and citizen.  This factor weighs in favor of release.

---

[2] The United States did not adequately piece the import of the cooler and shrimp together.  As far as the Court can guess, and this is merely a guess, the United States implies that the cooler was used to transport kilograms of cocaine from Santiago's Ram into Pinder's garage, where, at some point, it was filled with shrimp and then placed in the Jeep.

### F.  The Nature and Seriousness of Danger Posed by Release

The Court must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."   18 U.S.C. § 3142(g)(4).  As discussed above, the United States stressed Santiago's apparent lack of connection to the Eastern District of Kentucky outside of narcotics trafficking.  To this point, the Court agrees.  However, if Santiago is released to his home in Louisiana, there is no evidence he would continue criminal activity.  His criminal activity seemingly relates to trips to Texas/Mexico and Kentucky.

Weighing all the totality of the evidence before it, the Court finds the quantity and type of narcotics alleged to have been trafficked by Santiago is concerning; however, that is the only fact present here that weighs towards detention.  His history is entirely positive.  As discussed below, there is a combination of conditions that will adequately mitigate any risk Santiago could pose if released.

### G. Nonappearance Risk

Despite the United States's arguments, the Court finds the United States failed to meet its burden of preponderant evidence that Santiago is likely to fail to appear in court.  If he returns to his home in Louisiana and is supervised there, the Court believes there is little if any risk he will fail to appear at future court hearings.

### H. Availability of Conditions

On balance, the Court finds that the BRA demands release in this case.  The Court will require Santiago to return home to Louisiana, remain employed, check in with the United States Probation Office, abstain from alcohol, and refrain from any contact

with his codefendants.  This combination of conditions is sufficient to mitigate any risks to the community or of nonappearance that Santiago may pose.

## II.    CONCLUSION

As discussed above, the United States did not demonstrate by a preponderance of the evidence that Santiago is unlikely to appear as required and failed to prove by clear and convincing evidence that Santiago is an unmitigable danger to the community or others based on his criminal history and the charges herein.

Accordingly, **IT IS ORDERED** that the United States' oral motion for detention is **DENIED** and directs that Santiago be released pending resolution of the allegations against him.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the 26th of May, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY